UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALIM HASSAN,                          :
                                      :   Civil Action No. 08-6414 (DMC)
               Petitioner,            :
                                      :
          v.                          :   **OPINION**
                                      :
MICHELLE R. RICCI, et al.,            :
                                      :
               Respondents.           :

**APPEARANCES:**

> SONIA M. SILVERSTEIN, ESQ.
> SONIA M. SILVERSTEIN & ASSOCIATES
> 5 Split Rock Drive
> Cherry Hill, New Jersey 08003
> Counsel for Petitioner Alim Hassan
>
> STEPHANIE PAIGE DAVIS-ELSON, ESQ.
> HUDSON COUNTY PROSECUTOR'S OFFICE
> 595 Newark Avenue
> Jersey City, New Jersey 07306
> Counsel for Respondents

**CAVANAUGH**, District Judge

Petitioner Alim Hassan ("Hassan"), a convicted state prisoner presently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about March 12, 2004.  For the reasons stated herein, the Petition will be denied for lack of substantive merit.

## I.  BACKGROUND

A.  Procedural and Factual History

The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply
reproduce the recitation as set forth in the unpublished opinion
of the Superior Court of New Jersey, Appellate Division, decided
on August 5, 2008, with respect to petitioner's appeal from
denial of post-conviction relief:

On December 2, 2002, defendant was indicted by a Hudson
County Grand Jury under Indictment No. 03-01-0104 charging
five counts: murder of his mother-in-law, Bernadette
Seajatan, N.J.S.A. 2C:11-3a(1) or N.J.S.A. 2C:11-3a(2)(first
count); murder of his sister-in-law, Sharon Yassim, N.J.S.A.
2C:11-3a(1) or N.J.S.A. 2C:11-3a(2)(second count); murder of
his wife, Marlyn Hassan, N.J.S.A. 2C:11-3a(1) or N.J.S.A.
2C:11-3a(2)(third count); unlawful possession of a weapon,
N.J.S.A. 2C:39-5d (fourth count); and possession of a weapon
for an unlawful purpose, N.J.S.A. 2C:39-4d (fifth count).
As part of a negotiated plea agreement entered on December
1, 2003, the State conditionally withdrew the Notice of
Aggravating Factors it had filed and amended the third count
of the indictment from murder to first degree aggravated
manslaughter, N.J.S.A. 2C:11-4.  The plea agreement removed
defendant's exposure to the death penalty.[1]  In exchange,
defendant agreed to plead guilty to the first and second
counts and to the third count, as amended, Counts for and
five were to be dismissed.

The plea form disclosed that the prosecutor had agreed
to recommend on each count of murder thirty years
imprisonment with a period of parole ineligibility of thirty

---

[1]  Effective December 17, 2007, the [New Jersey State]
Legislature adopted legislation that abolished the death penalty
and replaced it with life imprisonment without the possibility of
parole.  L. 2007, c. 204; see also State v. Fortin, 400 N.J.
Super. 434, 439 (App. Div. 2008).

2

years and, on the aggravated manslaughter, thirty years with
a period of ineligibility for eighty-five percent of that
time. Defendant's total recommended exposure would be
ninety years in prison with a mandatory minimum of eight-
five years and six months. The plea form expressly recited,
however, that the "prosecutor [was] free to speak for
consecutive sentences on each count; defense [was] free to
speak for concurrent sentences."

During the colloquy at the plea hearing, the prosecutor
placed on the record the facts supporting the charges that
were the subject of the plea agreement. Before doing so,
the prosecutor acknowledged the circumstantial nature of the
evidence, commenting "Judge, the difficulty I have with
marking the documents is that there is no really no one
report that explains the case. It is a circumstantial
case." The prosecutor then began to place on the record the
proposed factual basis for the plea, which we repeat at
length:

Your Honor, at about 7:40 a.m. on July 30th, '02,
Jersey City police were called to 10 Fox Place in
Jersey City. When they arrived there, they found the ,
they found the three lifeless bodies of Bernadette
Seajatan, Sharon Yassim and Marilyn [sic] Hassan. Mrs.
Hassan is the wife of the Defendant.

There had been two young boys at home who basically
found the bodies of their mother, aunt and grandmother.

The police initially spoke to Lynette Foo who was the
sister of one of the victims. She explained to the
police who had been living at that address and it was
the three deceased women as well as the Defendant and
two other, the two other husbands of the two women.

On speaking with the two other husbands, Your Honor, it
became clear that the morning of the incident the other
two men had left the home to go to work at about 5:30
or six o'clock in the morning and had left when
everybody else in the house, that being the three
victims, the two young boys and Mr. Hassan were still
asleep, or so they thought, in the home.

At some point, Judge, as I said the husbands of the
other two victims were spoken to. They were not
believed to be involved in the incident.

3

When police spoke with the sister of Mr. Hassan, who lived in Philadelphia, they learned that Mrs. Hassan had been having problems -- they learned the same things from both victims and, victim and Defendant's friends and family, that there had certainly been conflict between victim and Defendant concerning religious, religious beliefs and how their two children, with whom Defendant's wife was pregnant should be raised.

That conflict extended to Mr. Hassan, Marilyn [sic] Hassan's mother and sister as well who seemed to be putting pressure on their daughter and sister to leave Mr. Hassan.

When the police spoke to Mr. Hassan's sister, they learned that at some point Mr. Hassan had been staying with his sister in Philadelphia, had borrowed a car and then moved back home with his family in Jersey City.

The morning of the incident, Mr. Hassan left Jersey City, Judge, apparently after the homicides, drove his car back to Philadelphia, left it at his sister's home, and then took a train back up to New York and then took public transportation, Your Honor, I think it was an Amtrak train from New York City up to Buffalo. He was arrested as he attempted to cross the Canadian border.

Again when detectives spoke with his sister, ultimately Mr. Hassan's sister indicated to police that at about, I think it was 6:30 on the morning, 6:50 a.m. on the morning of the homicide, Your Honor, that Mr. Hassan had called her and said "I did something crazy. I stabbed Marilyn [sic]. I don't believe I did something like that."

Your Honor, with reference to the autopsies, the autopsy of Bernadette Seajatan performed by the State Medical Examiner, indicated that she was found with two stab wounds to the neck, four stab wounds to the abdomen, one stab, one wound to her right flank, one wound to the left flank, one stab wound to the left torso, a stab wound to the back of her neck, one to the upper back, one to the mid-back, one to the hip and buttocks region, three incised wounds to the right hand, four to the left wrist and also one to the left thigh.

4

Your Honor, the cause of Bernadette Seajatan's death was multiple stab and incised wounds.

The manner of her death, homicide.

With reference to Sharon Yassim, Your Honor, she was also examined by the State Medical Examiner's Office. She was found to have multiple sharp force wounds. Those included ten stab wounds and five superficial cut wounds and defense wounds to her right hand.

She had internal injuries including severance to the right external jugular vein, the right internal carotid artery, as well as incised wound of the right ventricle of heart, diaphragm, large bowel and liver.

Your Honor, Sharon Yassim, with reference to Mrs. Yassim, the cause of her death was also multiple stab wounds and the manner of her death was found to be homicide.

And, Your Honor, Marilyn [sic] Hassan, who is the wife or was the wife of the Defendant, Mr. Hassan, Your Honor, at her autopsy the Medical Examiner found approximately fifteen stab wounds of the torso and neck with penetrations of the trachea, lung, live [sic], kidney, inferior vena cava, and uterus. A neck hematoma. Lungs with hemorrhage.

And a uterus with male fetus and female fetus approximately sixteen weeks gestational age.

Your Honor, there were also abrasive and incised wounds found upon Marilyn [sic] Hassan.

The cause of Marilyn [sic] Hassan's death was found to be stab wounds of the torso and neck.

And the manner of death, homicide.

At that juncture, the prosecutor and defense counsel agreed that an adequate factual basis for the plea had been placed on the record and defense counsel represented that defendant was "acknowledging his culpability. His criminal liability." Significantly, defendant did not personally make that acknowledgment. Rather, the questions directed by the court to defendant, who had previously been placed under oath, continued as follows:

5

THE COURT: You did hear what [the prosecutor] said, correct?

DEFENDANT HASSAN: Yes, My Worship.

THE COURT: Do you agree with the factual basis that she --

DEFENDANT HASSAN: Yes, My Worship.

[DEFENSE COUNSEL]: Your Honor he is saying yes, My Worship. You can say yes My Honor, Your Honor, excuse me.

. . .

THE COURT: I show you a copy of this plea form and ask you if, if that is your signature?

DEFENDANT HASSAN: Yes, My Honor.

THE COURT: Did you go over those questions and answers with both your attorneys?

DEFENDANT HASSAN: Yes, My Honor.

THE COURT: Did you understand the questions and answers?

DEFENDANT HASSAN: Yes.

THE COURT: Do you understand that by pleading guilty you are waiving your right to a trial, you were set up here for quite a period of time, last time to speak to your attorneys. The court was ready to proceed with the trial.

Do you understand that?

DEFENDANT HASSAN: Yes.

The court continued to ask defendant whether he understood his rights and the terms of the plea agreement. The court then asked defendant if anybody forced, coerced or threatened him in any way to enter the plea, and defendant responded, "No." The court then reminded defendant of the consequences, the potential sentencing exposure, telling him:

6

The minimum sentence that you can receive due to the circumstances here would be 30 years. And that minimum will carry 30 years before you are eligible for parole. The maximum sentence, of course, if the Court would run these consecutively, would be 90 years which is a life sentence. It would be the rest of your life.

The Court has no idea at this point as to how I will proceed. The [sic] terms of whether it will be consecutive or concurrent.

. . .

And the 30 years without parole, it could be 60 years if they were run consecutively. And it could be as much as 90 years which, as I said before essentially certainly a life sentence. The rest of your life in jail without the possibility of parole. That is a possible sentence and you understand that?

DEFENDANT HASSAN: Yes.

On March 11, 2004, a judgment of conviction was entered imposing upon defendant, for each murder conviction, consecutive terms of thirty years, subject to thirty years of parole ineligibility for each, and for the aggravated manslaughter count, a term of thirty years subject to eighty-five percent parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appealed the sentence, contending it was excessive. On April 29, 2005, we heard oral argument on that appeal on an excessive sentencing calendar pursuant to Rule 2:9-11.[2] We affirmed judgment of conviction. Defendant did not petition the Supreme Court for certification.

On November 16, 2005, defendant filed the PCR petition that is the subject of this appeal. The matter was heard on March 20, 2006, and the PCR court rendered its decision on the record on April 17, 2006, denying the requested relief. The order to that effect was filed on April 18, 2006.

---

[2] We note that defendant's appendix includes a letter to the Public Defender's Office, dated August 24, 2004, in which defendant "begged" that his case be withdrawn from the excessive sentencing oral argument calendar and that it be submitted to the Appellate Section seeking full review of the case. Nevertheless, the matter was considered on the excessive sentencing calendar.

(Ra271-280,[3] August 5, 2008 Appellate Division Opinion at pp. 1-10).

Hassan filed an appeal from denial of his state PCR petition to the Appellate Division.  The Appellate Division affirmed in an Opinion issued on August 5, 2008.  (Ra271-292).  The Supreme Court of New Jersey denied certification on November 19, 2008.

Hassan filed this habeas petition on or about December 30, 2008.  Thereafter, Hassan retained counsel, who filed a supplement to his habeas petition on August 5, 2009.  The State responded to the petition, and provided the relevant state court record, on or about April 16, 2010.  Hassan, through counsel, filed a reply/traverse on April 27, 2010.

## II.  STATEMENT OF CLAIMS

Hassan asserts the following claims in his petition/ supplemental petition for habeas relief:

A.  A defendant must know all the penal consequences of a plea agreement before he can waive his constitutional rights and plead guilty.

B.  Defendant's plea and sentence should be vacated because he did not provide the court with a factual basis for the plea nor was the plea entered into knowingly and with full knowledge of its consequences.

---

[3]  "Ra" refers to the respondents' appendix, in which the State provided the relevant state court.

8

C. Defendant was denied effective assistance of counsel because his trial attorneys failed to advise the defendant that his plea agreement could result in consecutive sentences being imposed for each homicide.

D. The order denying post-conviction relief should be reversed because the post-conviction court erred in denying relief where the evidence at the plea colloquy clearly failed to provide a factual basis for the plea, and defendant failed to enter the plea with full knowledge of its consequences due to ineffective assistance of trial counsel.

E. The order denying post-conviction relief should be reversed and the matter remanded to the Law Division since the post-conviction court erred in denying defendant-appellant a hearing on his petition for post-conviction relief alleging ineffective assistance of counsel.

F. The order denying post-conviction relief should be reversed because the post-conviction court erred in denying relief where appellate counsel rendered ineffective assistance since counsel failed to raise reversible issues on appeal.

G. The claims raised by defendant in the within petition were not litigated on direct appeal and failure to raise all ineffective assistance of counsel claims on direct appeal did not procedurally bar claim in post-conviction proceedings.

H.   The court hearing the PCR petition erred in failing to grant the petition because defendant was misinformed by his counsel as to the nature of the sentence he was to receive pursuant to the plea.

I.   PCR counsel failed to ensure defendant had a full hearing on the issue of the misinformation issue during plea negotiations.

J.   The formulary series of questions posed by the trial court and the rhetorical responses by the defendant constituting the taking of the plea do not meet the constitutional requirements of a knowing, voluntary, and understanding plea.

K.   Defense counsel's permitting the defendant to participate in the series of formulary questions by the court and rhetorical answers by the defendant without requiring that the defendant define or explain in a substantial manner consistent with his education and intellect the nature and elements of his criminal charges, the legal efficacy of his acts, and the extent of possible sentences or fines constituted ineffective assistance of counsel by not assuring that the defendant was able to establish a record that the plea was knowingly, voluntarily, and understandably given.

L.   Upon examination of the totality of the circumstances, the entering of the defendant's guilty plea was a manifest injustice lacking basic fairness to the defendant.

10

M. A sentence predicated on a constitutionally defective plea of guilty is itself constitutionally defective and therefore invalid.

N. Defendant's application for PCR is not procedurally barred pursuant to Rule 3:22-4 because every attempt was made pro se to have his claims raised on direct appeal.

See Petition at ¶¶ 12a through 12n, respectively.

Hassan's assigned counsel submitted a supplement to the habeas petition raising the following three claims:

1. The decision of the Appellate Division is contrary to clearly established federal law established by the United States Supreme Court in Henderson v. Morgan, 426 U.S. 637 (1976).

2. The decision of the Appellate Court is either contrary to or an unreasonable application of Henderson v. Morgan, supra, and Strickland v. Washington, 466 U.S. 668 (1984).

3. The decision of the Appellate Court is either contrary to or an unreasonable application of Henderson v. Morgan, supra, Strickland v. Washington, supra, and Evitts v. Lucy, 469 U.S. 387 (1985).

The State essentially contends that the petition should be denied for lack of substantive merit or because it fails to raise claims of federal constitutional dimension. The State also raises affirmative defenses that some of petitioner's claims are unexhausted, that some of the claims fail to assert violations of

11

a federal constitutional right, and that the petition is time-barred.

This Court finds that the petition was timely filed pursuant to 28 U.S.C. § 2244(d)(1) and (2).  Additionally, with respect to the State's claim that Hassan has failed to exhaust all of his claims for habeas relief, the Court notes that, under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Because this Court has determined, as set forth below, that this petition should be denied for lack of merit, the petition need not be dismissed for failure to exhaust state court remedies on all claims asserted.

With respect to Hassan's claim set forth at 12i in his petition, where he essentially asserts a claim of ineffective assistance of PCR counsel, such claim must be dismissed pursuant to 28 U.S.C. § 2254(i), because the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).

The Court now turns to the remaining claims and defenses asserted by the parties in this action.

12

### III.  STANDARD OF REVIEW

Although the docket reflects that Hassan is represented by counsel, the record shows that petitioner's submissions in this matter have been pro se.  A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).  Thus, because it appears that Hassan initially was proceeding as a pro se litigant in this matter, the Court will accord his original petition the liberal construction intended for pro se petitioners.

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County

13

Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

    In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

    In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to

14

grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See Rompilla, 355 F.3d at 247. See also Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the

15

merits of a claim is entitled to § 2254(d) deference)). On the
other hand, "[i]f the petitioner's legal claims were presented
but not addressed by the state courts, 28 U.S.C. § 2254(d) does
not apply." Rolan, 445 F.3d at 678. See also Hameen v. State of
Delaware, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment), cert.
denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL
1523144, *6 n.4 (D.N.J. 2000).

     If the New Jersey courts adjudicated the petitioner's claims
on the merits, this Court may not grant relief unless either §
2254(d)(1) or § 2254(d)(2) is satisfied. See 28 U.S.C. §
2254(d). Accordingly, this Court may not grant habeas relief to
the petitioner unless the adjudication of a federal claim by the
New Jersey courts involved an unreasonable application of clearly
established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding and Adamson
is in custody in violation of the Constitution or laws or
treaties of the United States. See 28 U.S.C. § 2254(a), (d)(2).

     When the grounds raised in the petition are governed by 28
U.S.C. § 2254(d)(1), the court must begin its analysis by
determining the relevant law clearly established by the Supreme
Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).

Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4] See id. at 409-10. "The unreasonable application

_____

[4] See also Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as

17

test is an objective one-a federal court may not grant habeas
relief merely because it concludes that the state court applied
federal law erroneously or incorrectly." Thomas v. Varner, 428
F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d
92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption
of correctness to factual determinations made by the state
court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit
has ruled that this presumption of correctness based upon state
court factual findings can only be overcome by clear and
convincing evidence. See Duncan, 256 F.3d at 196 (*citing* 28
U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must
clear a high hurdle before a federal court will set aside any of
the state court's factual findings." Mastracchio v. Vose, 274
F.3d 590, 597-98 (1st Cir. 2001).

---

well as helpful amplifications of that precedent.")(citations and
internal quotation marks omitted).

## IV.  ANALYSIS

### A.  Claims Regarding the Guilty Plea

In claims A, B, J, L, and M of his petition, Hassan argues
that his guilty plea must be vacated because it is
constitutionally defective and manifestly unjust.  Namely, Hassan
asserts that his plea was not knowing, voluntary, or
understandably given because he was not informed by counsel of
the penal consequences of his plea, and because Hassan did not
provide a factual basis for the plea.  In Claim D, Hassan further
contends that the state PCR court erred by denying relief upon a
finding that the plea colloquy provided a proper factual basis
for the guilty plea.

These claims were raised in Hassan's PCR proceedings.[5]
Hassan argued that there was no factual basis given and no
evidence placed on the record that showed that he had
acknowledged any type of responsibility for the deaths of his
mother-in-law and sister-in-law.  Further, Hassan argued that the
prosecutor's evidence provided only evidence of multiple stab
wounds of the victims but no direct evidence that Hassan had
inflicted those wounds.  The PCR court rejected petitioner's

---

[5]  The Court notes that Hassan's appellate counsel on direct
appeal with respect to the excessive sentencing issues did
address the claim that no factual basis was given for the plea.
See April 28, 2005 Hearing Transcript ("3T") at 3T 48:1-17.

arguments.  In ruling that the guilty plea was sufficient, the court found:

> Rule 3:9-2 requires that the Court must independently satisfy itself that there is a factual basis for the plea, that the plea is made voluntarily, not as a result of any threats or any promises or inducements not disclosed on the record and three, with an understanding of the nature of the charge and the consequence -- consequences of the plea.
>
> In most cases a factual basis is elicited from the defendant except in a capital offense or a lesser included offense when the defendant is charged with a crime punishable by death.  No factual basis shall be required from the defendant before entry of a plea of guilt provided the Court is satisfied from proofs presented that there is a factual basis for the plea.
>
> Here the record does show that the petitioner did understand the nature of the charge, charges, although he did not provide the factual basis for the charge himself.  The factual basis, the -- the factual basis was not required from the defendant because of the capital case however it was in fact provided by the State and agreed to by the defendant.
>
> The Court finds that the defendant did have an understanding of the plea and the charge. He further -- the defendant further alleges that he did not understand the importance and the effect of his plea and that it was not made knowingly or intelligently.  These assertions however, are unsupported by the record.
>
> The defendant stated according to the transcripts that he understand [sic] the factual basis that the State presented and agreed with the factual basis.  He also stated on the record that he himself had signed the plea form, that he had enough time to discuss this case with his lawyers before deciding to plead guilty and that he understood that by pleading guilty he was waiving his right to a trial.
>
> When the defendant, Mr. Hassan's, guilty plea were entered the trial judge in this case, Judge Davis, carefully and fully complied with the mandates of rule 3:9-2 to ensure that the defendant understood the nature and consequences of the charge.  Judge Davis also advised the defendant of his right to a jury trial, counsel and informed him that the

20

minimum sentence would be 30 years and the maximum sentence,
if the court would run these counts consecutively, would be
90 years, a life sentence.  Thus, the Court finds that the
guilty plea was sufficient to comply with rule 3:9-2 and
therefore it should not be disturbed.

(April 17, 2006 PCR Hearing Transcript ("5T"), 5T 7:5-8:3).

In affirming the denial of the PCR petition, the Appellate

Division found:

We agree fully with the PCR court that the record, including
the transcript of the plea hearing and the plea forms,
demonstrated that defendant well-understood the charges and
the consequences of his plea and that he knowingly and
voluntarily waived his right to a trial.  Defendant's
continuing arguments to the contrary are so lacking in merit
that they do not warrant discussion in a written opinion.

(Ra283, August 5, 2008 Appellate Division Opinion at p. 13).

The Appellate Division further commented that the

circumstantial evidence discussed at the plea hearing provided "a

strong, almost irresistible, link between defendant and the

deaths of all three women," and that a conviction may be based

solely on circumstantial evidence.  (Ra284).  Indeed, Hassan's

"departure from Jersey City to Philadelphia and then to New York

City, Buffalo and the Canadian border constituted a flight,

giving rise to a compelling inference of consciousness of guilt."

(Ra286).  In addition, the appellate court found that Hassan

never contradicted his plea of guilt, "[he] never said he did not

do it.  He simply says the State failed to prove that he did it."

(Ra285-286).

The Appellate Division also found that the record provided a
sufficient factual basis for the trial court to conclude that
Hassan intended to cause serious bodily injury that resulted in
death. Specifically, the court stated that "the number and
locations of the wounds inflicted upon each victim in this case
did provide a factual basis for the court to conclude, at a
minimum, that the actor intended to cause serious bodily injury
that resulted in death. We are satisfied that the record
contains a sufficient basis for the trial court to have accepted
defendant's plea of guilty to non-capital murder." (Ra288). The
court further stated:

> At the plea hearing, defendant did not assert a
> contemporaneous claim of innocence; nor is such a claim
> asserted in his appellate brief. Rather, defendant
> emphasizes his view that no evidence was offered to support
> the conclusion that defendant was responsible for the deaths
> of Bernadeatte Seajatan and Sharon Yassim. As we have
> indicated, that view fails to take account of the powerfully
> persuasive circumstantial facts of this case.

(Ra289-290).

> In finding no manifest injustice, the court concluded:

> Here, defendant agreed to plead guilty to the non-capital
> charges in exchange for the assurance that he would not face
> the death penalty. While defendant contends that his
> counsel led him to believe he would receive concurrent terms
> for the three offenses, that contention is belied by the
> plea forms, which expressly reserved and announced the
> prosecutor's right to seek consecutive sentencing. The
> transcript of the plea hearing also reveals the trial court
> reminded defendant at least twice that if the plea were
> accepted, defendant might spend the rest of his life in
> prison. In the face of those reminders, defendant could not
> have reasonably relied on any contrary predictions by
> counsel. Nor could defendant have had a reasonable

22

expectation that the sentence would run concurrently. Defendant could have reasonably expected he would not be subject to the death penalty and that he would be permitted to advocate for concurrent sentences. Those expectations were fulfilled. We perceive no manifest injustice.

(Ra291-291).

Due process requires that guilty pleas be entered knowingly and voluntarily. See Boykin v. Alabama, 395 U.S. 238, 242 (1969); United States v. Tidwell, 521 F.3d 236, 251 (3d Cir. 2008). See also United States v. Ruiz, 536 U.S. 622, 628 (2002)(due process requires that a guilty plea is "voluntary" and that the defendant's waiver of his constitutional rights is "knowing, intelligent, [and] with sufficient aware ness of the relevant circumstances and likely consequences")(quoting Brady v. United States, 397 U.S. 742, 748 (1970). It is crucial that the record show not only that a defendant was aware of his rights, but also that he "intelligently and understandingly" waived them. Id. See also Johnson v. Zerbst, 304 U.S. 458, 464 (1938)("[waiver must be] an intentional relinquishment or abandonment of a known right or privilege"). A guilty plea entered by one fully aware of the direct consequences of the plea is voluntary "'unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"

23

Brady, 397 U.S. at 755 (quoting Shelton v. United States, 246
F.2d 571, 572 n.2 (5th Cir. 1956) (en banc), rev'd on confession
of error on other grounds, 356 U.S. 26 (1958)).

Moreover, a defendant who pleads guilty must be advised of
the "permissible range of sentences," Boykin, 395 U.S. at 244 n.
7, including the maximum sentence and the mandatory minimum
sentence, if any, see Jamison v. Klem, 544 F.3d 266, 277 (3d Cir.
2008), as well as the deportation consequences of a guilty plea,
see Padilla v. Kentucky, --- U.S. ----, ----, 130 S.Ct. 1473,
1483, 176 L.Ed.2d 284, ----(2010). The Court of Appeals for the
Third Circuit has held that the only direct consequences relevant
to evaluating the voluntariness of a guilty plea are the maximum
prison term and fine for the offense charged. See Parry v.
Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), cert. denied, 516
U.S. 1058 (1996), superseded by statute on other grounds as
stated in Dickerson v. Vaughn, 90 F.3d 87 (3d Cir. 1996). A
guilty plea is made intelligently only if a criminal defendant
receives "'real notice of the true nature of the charge against
him ... .'" Bousley v. United States, 523 U.S. 614, 618 (1998)
(quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

The Third Circuit further has held that:

no criminal defendant should plead guilty to a crime unless,
and until, he has had explained to him and understands all
of his constitutional rights and protections, including the
privilege against compulsory self-incrimination guaranteed
by the Fifth Amendment, the right to a trial by jury, and
the right to confront one's accusers.

24

Hill v. Beyer, 62 F.3d 474, 480 (3d Cir. 1995)(citing Boykin, 395

U.S. at 243); see also United States v. Peppers, 302 F.3d 120,

135 (3d Cir. 2002)(stating that "to be valid [a defendant's]

waiver must be made with apprehension of the nature of the

charges, the statutory offenses included within them, the range

of allowable punishments thereunder, possible defenses to the

charges and circumstances in mitigation thereof, and all other

facts essential to a broad understanding of the whole matter"),

cert. denied, 537 U.S. 1062 (2002); but see United States v.

Thomas, 357 F.3d 357, 364 (3d Cir. 2004)(describing these same

factors as "illustrative examples of factors that courts might

discuss, not a mandatory checklist of required topics").

Further, the Supreme Court has explained that the level of

detail in the plea colloquy is not dispositive:

> [T]he law ordinarily considers a waiver knowing,
> intelligent, and sufficiently aware if the defendant fully
> understands the nature of the right and how it would likely
> apply in general in the circumstances-even though the
> defendant may not know the specific detailed consequences of
> invoking it. ...  If [the defendant] ... lacked a full and
> complete appreciation of all of the consequences flowing
> from his waiver, it does not defeat the State's showing that
> the information it provided to him satisfied the
> constitutional minimum.

Iowa v. Turner, 541 U.S. 77, 92 (2004)(emphasis, internal

quotation marks, and citation omitted).

The above standards govern the validity of a guilty plea

even when a criminal defendant protests his innocence despite his

entry of a guilty plea.

25

> [W]hile most pleas of guilty consist of both a waiver
> of trial and an express admission of guilt, the latter
> element is not a constitutional requisite to the
> imposition of criminal penalty [when, as in the instant
> case,] a defendant intelligently concludes that his
> interests require entry of a guilty plea and the record
> before the judge contains strong evidence of actual
> guilt.

North Carolina v. Alford, 400 U.S. 25, 37 (1970). The Supreme

Court noted further that "[b]ecause of the importance of

protecting the innocent and of insuring that guilty pleas are a

product of free and intelligent choice, various state and federal

court decisions properly caution that pleas coupled with claims

of innocence should not be accepted unless there is a factual

basis for the plea and until the judge taking the plea has

inquired into and sought to resolve the conflict between the

waiver of trial and the claim of innocence." Id. at 38 n.10

(citations omitted). Applying Alford, the Court of Appeals for

the Third Circuit has held that "there must always exist some

factual basis for a conclusion of guilt before a court can accept

an Alford plea." United States v. Mackins, 218 F.3d 263, 268 (3d

Cir. 2000), cert. denied, 531 U.S. 1098 (2001).

Here, upon careful review of the record, this Court finds

nothing substantive to support Hassan's claim that his guilty

plea was not knowing, voluntary or intelligently made. The plea

transcript and plea form show that Hassan was made aware and was

repeatedly told that his sentences on each homicide could run

consecutively. The trial judge made this abundantly clear to

Hassan at the plea hearing several times. In exchange for his

guilty plea, Hassan was assured that he would not face the death penalty in effect at that time, and that the sentences would be 30 years for each homicide.  He was not promised concurrent sentencing, only the agreement to advocate for concurrent sentencing.  Thus, Hassan was armed with the full knowledge of his options and knowingly chose to enter a plea of guilty as agreed.

Moreover, there was no inadequacy with respect to the factual basis for the plea.  As the appellate court observed, the State had provided "strong, almost irresistible" circumstantial evidence and "powerfully persuasive circumstantial facts" to support Hassan's guilty plea.  Hassan affirmatively stated to the trial court at the plea hearing that he understood the factual basis that the State presented and agreed with the factual basis.

Consequently, this Court cannot conclude that the determination of the state PCR court and appellate court in finding Hassan's guilty plea to be knowing and voluntary, resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Williams v. Taylor, supra. Petitioner has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171

F.3d at 891. Therefore, the Court will deny federal habeas relief on these claims, A, B, D, J, L and M, concerning Hassan's guilty plea because petitioner's claims are substantively meritless.

## B. Ineffective Assistance of Counsel Claims

Next, in Claims C, F, H, and K of his petition, Hassan alleges claims that his trial and appellate counsel rendered ineffective assistance of counsel in violation of his Sixth Amendment rights. In particular, Hassan asserts that his trial counsel failed to advise or inform him that consecutive sentences could be imposed for each homicide. Further, Hassan alleges that counsel was ineffective in allowing Hassan to "participate in a series of formulary questions by the court," which elicited only "yes" or "no" responses from Hassan "without requiring that [Hassan] define or explain in a substantial manner consistent with his education and intellect the nature and elements of his criminal charges, the legal efficacy of his acts, and the extent of possible sentences or fines." (Petition at ¶ 12k). Hassan also asserts that his appellate counsel was ineffective because he failed to raise reversible issues on direct appeal.

Hassan raised these arguments in his state PCR proceedings. The PCR court ruled as follows:

> The next issue was whether the petitioner established a prima facie claim in support of ineffective assistance of counsel which would require an evidentiary hearing.
>
> The petitioner, Mr. Hassan, asserts that his trial counsel did not properly advise him of his sentencing exposure when

he decided to plead guilty. He alleges that his attorney advised him that if he entered into this plea agreement the Court would impose three concurrent sentences of -- sentences of 30 years. The record shows however, notwithstanding that the defendant's attorney may have advised the defendant, the defendant was fully informed of the consequences of his plea agreement because the trial judge advised the defendant of his sentencing exposure.

Of course there is communication between the defendant and his attorney, that everything that has been said between he and his attorney is not always on the record, every single thing, however, the Court finds that Mr. Hassan was fully aware of the consequences of his plea, therefore the -- in this case in the transcript it reads where the judge had stated that -

> "The minimum sentence that you can receive due to the circumstances here would be 30 years and the minimum will carry 30 years before you are eligible for parole. The maximum sentence of course, if the Court would run these consecutively would be 90 years which is a life sentence, it would be for the rest of your life."

In this case, to establish a prima facie case of ineffective assistance a defendant must demonstrate a reasonable likelihood of success on the test established by Strickland v. Washington, 440 —-- 466, excuse me, U.S. 668, a 1984 case and adopted by our Supreme Court in State v. Fritz, (phonetic), 105 New Jersey 5 (1987).

Under the Strickland test the defendant must show that his counsel was deficient and counsel's deficient performance prejudiced his defense. This requires showing that counsel's errors so serious as to deprive defendant of a fair trial, a trial whose result is reliable. To establish that his attorney was deficient, a defendant must show that counsel's actions were outside the wide range of professionally competent assistance.

In this case the record shows that notwithstanding what defendant's counsel may have advised the defendant, the defendant was fully informed of his potential sentencing exposure because the judge properly advised the defendant as to that exposure. And therefore, the Court feels -- finds that the petitioner was fully informed of his sentencing exposure, thus there is no prima facie case that requires an evidentiary hearing and the defendant did receive effective assistance of counsel.

(April 17, 2006 PCR Transcript, 8:4-10:9).

The Appellate Division affirmed the PCR Court, rejecting both of Hassan's ineffective assistance of trial counsel and appellate counsel claims.  The court expressly observed: "While defendant contends that his counsel led him to believe he would receive concurrent terms for the three offenses, that contention is belied by the plea forms, which expressly reserved and announced the prosecutor's right to seek consecutive sentencing. The transcript of the plea hearing also reveals the trial court reminded defendant at least twice that if the plea were accepted, defendant might spend the rest of his life in prison.  In the face of those reminders, defendant could not have reasonably relied on any contrary predictions by counsel."  (August 5, 2008 Appellate Division Opinion at pp. 21-22, Ra291-92).

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  To meet this first prong of deficient performance, a

30

"convicted defendant making a claim of ineffective assistance
must identify the acts or omissions of counsel that are alleged
not to have been the result of reasonable professional judgment."
Id. at 690.  The court must then determine whether, in light of
all the circumstances at the time, the identified errors were so
serious that they were outside the wide range of professionally
competent assistance.  Id.

     If able to demonstrate deficient performance by counsel,
then the petitioner must show prejudice, i.e., there is a
"reasonable probability that but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Id. at 694.  As the Strickland Court explained, "[a]ttorney
errors come in an infinite variety and are as likely to be
utterly harmless in a particular case as they are to be
prejudicial."  Id. at 693.  Thus, the Court held that prejudice
is shown if "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome."
Id. at 694.  The reviewing court must evaluate the effect of any
errors in light of the totality of the evidence.  See id. at 695-
96.  Thus, the petitioner must establish both deficient
performance and resulting prejudice in order to state an
ineffective assistance of counsel claim.  See id. at 697; see
also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.  However,

31

the Supreme Court further instructed that a district court need
not address both components of an ineffective assistance claim
"if the defendant makes an insufficient showing on one."
Strickland, 466 U.S. at 697.  "If it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient
prejudice, which we expect will often be so, that course should
be followed."  Id.

     In this case, Hassan's ineffective assistance of counsel
claims against his trial counsel are two-fold.  First, he asserts
that his trial counsel failed to advise or inform him that
consecutive sentences could be imposed for each homicide.
Second, Hassan seems to contend that trial counsel was
ineffective in allowing Hassan to plead guilty to three homicide
charges without requiring that Hassan "define or explain in a
substantial manner consistent with his education and intellect
the nature and elements of his criminal charges, the legal
efficacy of his acts, and the extent of possible sentences or
fines."

     In Hill v. Lockhart, 474 U.S. 52, 60 (1985), the Supreme
Court examined an ineffective assistance of counsel claim
involving a guilty plea.  In Hill, the Court held that, where a
§ 2254 petitioner entered a guilty plea with the advice of
counsel, there is no prejudice under Strickland, unless the
petitioner asserts that "there is a reasonable probability that,
but for counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial." Hill, 474 U.S. at 59.
Similarly, the Third Circuit has held, in cases where a defendant
claims that he was induced to plead guilty based on the
ineffective assistance of counsel, that a defendant "must make
more than a bare allegation that but for counsel's error he would
have pleaded not guilty and gone to trial." Parry v. Rosemeyer,
64 F.3d 110, 118 (3d Cir. 1995), superseded by statute on other
grounds as stated in Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.
1996). See also Rice v. Wynder, 346 Fed. Appx. 890, 893 (3d Cir.
September 30, 2009).

     In Hill, the petitioner pleaded guilty in state court to
first degree murder and theft, but thereafter sought federal
habeas relief on the ground that his attorney was ineffective in
failing to advise him that, as a second offender, he would be
required to serve one-half (rather than one-third) of his
sentence before becoming eligible for parole.  Under Arkansas
law, the murder charge to which Hill pleaded guilty carried a
potential sentence of 5 to 50 years, or life in prison.  Counsel
negotiated a plea agreement whereby the State agreed to recommend
an aggregate 35-year sentence.  The trial judge sentenced Hill to
the recommended 35-year term, and mistakenly told Hill that he
would have to serve at least one-third of the 35-year term before
becoming eligible for parole.  Hill, 474 U.S. at 53-54.

     More than two years after sentencing, Hill filed a § 2254
petition alleging that his counsel was constitutionally

                                 33

ineffective in incorrectly advising him that he would become
eligible for parole after serving one-third of his sentence, when
in reality, Hill was required to serve one-half of his sentence
before becoming eligible for parole. Hill asked the district
court to reduce his sentence to a term of years that would result
in his becoming eligible for parole in conformance with his
expectation at sentencing. The district court denied the § 2254
petition and the Court of Appeals affirmed. Hill, 474 U.S. at
54-56. Finding that the two-part Strickland test applies to
ineffective assistance claims arising out of the plea process,
the Supreme Court affirmed the order denying § 2254 relief
because Hill's allegations were insufficient to satisfy the
Strickland v. Washington requirement of "prejudice."
Specifically, the Court noted that Hill did not allege in his
habeas petition that, had counsel correctly informed him about
his parole eligibility date, he would have pleaded not guilty and
insisted on going to trial. He alleged no special circumstances
that might support the conclusion that he placed particular
emphasis on his parole eligibility in deciding whether or not to
plead guilty. Indeed, Hill's mistaken belief that he would
become eligible for parole after serving one-third of his
sentence would seem to have affected not only his calculation of
the time he likely would serve if sentenced pursuant to the
proposed plea agreement, but also his calculation of the time he

likely would serve if he went to trial and were convicted.  Hill,
474 U.S. at 59-60.

This Court likewise finds no prejudice to Hassan.
Significantly, unlike the Hill petitioner, Hassan was informed by
the trial judge that he faced a potential 90-year consecutive
term.  The plea form also shows that the sentencing exposure
contemplated that a consecutive 90-year term would likely be
sought by the prosecutor.  Thus, Hassan's claim that counsel was
ineffective in failing to advise him that the sentences could be
imposed consecutively for a maximum term of 90 years fails to
show prejudice because the record shows that Hassan was fully
informed of the consecutive sentencing.  Thus, Hassan can not now
argue that, had counsel informed him as to the possibility of
consecutive sentences, he would have declined the plea agreement
and insisted on going to trial.  Indeed, it would be difficult
for him to so argue since Hassan clearly was aware of the
potential 90-year term, and proceeded to go forward with his
guilty plea after the trial judge so informed him of consecutive
sentencing.  Therefore, because Hassan has failed to allege the
kind of "prejudice" necessary to satisfy the second half of the
Strickland v. Washington test, his habeas petition must be denied
with respect to his ineffective assistance of counsel claim.
Hill, 474 U.S. at 60.  See also United States v. Peppers, 273
Fed. Appx. 155, 159 (3d Cir. 2008)(counsel was not
constitutionally ineffective in plea process where Peppers failed

to assert prejudice and "has made no contention that he would not have entered his plea and would have insisted on going to trial if his counsel had advised him that the ACCA arguably may not have applied"); Powell v. Meyers, 214 Fed. Appx. 197, 200 (3d Cir.007)(§ 2254 petitioner's claim that plea counsel was constitutionally ineffective in failing to advise him that his back-time sentence could not be served concurrently with his instant sentence fails to establish prejudice where petitioner does not assert that he would have insisted on going to trial had he known that it was legally impossible for his back-time sentence to be served concurrently); United States v. Kauffman, 109 F.3d 186, 191 (3d Cir. 1997) (defendant alleging ineffective assistance in guilty plea context needs to present evidence "sufficient to undermine our confidence that [the attorney] would have advised his client to plead guilty rather than proceed to trial and that [the defendant] would have accepted that advice").

Likewise, the Court finds that Hassan has failed to demonstrate prejudice with respect to the claim that his counsel was ineffective with respect to Hassan's plea colloquy, thereby rendering the guilty plea as unknowing and involuntary.  The record clearly shows that Hassan acknowledged his guilt after the assistant prosecutor stated the facts and sources of the facts concerning the charges on the record.  Moreover, as set forth above, the state courts found no inadequacy as to the factual basis for the plea.  Indeed, the Appellate Division observed that

36

there was "strong, almost irresistible" circumstantial evidence and "powerfully persuasive circumstantial facts" to support Hassan's guilty plea.  At no point did Hassan state or indicate that he did not understand the nature of the charges against him.

The State argues that this case is analogous to North Carolina v. Alford, 400 U.S. 25 (1970), which established that the factual basis of a first degree murder case that is pled out may be placed on the record by those, other than the defendant himself, so long as the defendant acknowledges the facts presented and the facts presented adequately describe the crime or crimes involved.  In Alford, the State placed a factual basis on the record that, through circumstantial evidence, implicated the defendant in the murder to which he pled guilty.  Id. 400 U.S. at 28.  The reviewing court was satisfied with the factual basis provided by the State and found no reason to disturb the plea.  Id., 400 U.S. at 39.

This Court finds Alford to be similar in many respects. First, both matters were capital cases, where the State, by election of the petitioner, was responsible for presenting the factual basis for the crimes involved.  In the present case, that factual basis included an admission by Hassan that he had stabbed his wife and that the manner of death for all three victims was homicide.  (1T 7:2-11:2).  Further, when the judge asked Hassan whether or not he agreed with the factual basis as set forth by the prosecutor, Hassan replied in the affirmative.  (1T 11:2-

12:3). Hassan never once professed his innocence, nor did he
ever indicate that he did not understand or agree with the
factual basis presented by the State.

Finally, the Supreme Court has held that the Due Process
Clause of the Fourteenth Amendment guarantees a defendant the
effective assistance of counsel on a first direct appeal as of
right. See Evitts v. Lucey, 469 U.S. 387 (1985). Claims of
ineffective assistance of appellate counsel are evaluated under
the Strickland standard. See Lewis v. Johnson, 359 F.3d 646, 656
(3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n. 10
(E.D.Pa. July 26, 2004). Appellate counsel does not have a duty
to advance every nonfrivolous argument that could be made, see
Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may
establish that appellate counsel was constitutionally ineffective
"if he shows that counsel omitted significant and obvious issues
while pursuing issues that were clearly and significantly
weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate
counsel was ineffective, a petitioner must show not only that
counsel's performance fell below an objective standard of
reasonableness, but also that there was a reasonable probability,
but for counsel's deficiency in raising the arguments on appeal,
that the conviction would have been reversed on appeal. See
Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed,
527 U.S. 1050 (1999).

38

Hassan argues that his appellate counsel was ineffective because he failed to raise the above arguments on direct appeal. Based on the state court record and state court factual findings, this Court finds no merit to Hassan's claim. Hassan fails to demonstrate that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Rather, he simply contends that counsel failed to raise non-meritorious claims which had no reasonable probability in reversing his conviction on appeal, as demonstrated by the Appellate Division's ruling on appeal from denial of post conviction relief that there was sufficient evidence to sustain the plea. See Buehl, 166 F.3d at 173-74. Consequently, Hassan's ineffective assistance of appellate counsel claim fails because he cannot demonstrate either deficient performance or any resulting prejudice, and it will be denied pursuant to 28 U.S.C. § 2254(b)(2) for lack of merit.

Therefore, with regard to all of Hassan's ineffective assistance of trial and appellate counsel claims, this Court concludes that the determination of the state PCR court and appellate court in finding no constitutionally ineffectiveness of counsel, resulted in a decision that was neither contrary to, nor involved an unreasonable application of clearly established federal law under Strickland, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

39

<u>Williams v. Taylor</u>, <u>supra</u>.  Hassan has failed to demonstrate that
the state court opinions, when evaluated objectively and on the
merits, resulted in an outcome that cannot be reasonably
justified.  <u>Matteo</u>, 171 F.3d at 891.  Therefore, the Court will
deny federal habeas relief on these claims, C, E, F, H, and K,
because they are substantively meritless.

C.  <u>Remaining Claims</u>

In Claim G, Hassan contends that his ineffective assistance
of counsel claims were not procedurally barred in his state PCR
proceedings simply because he did not raise them on direct
appeal.  As set forth in the preceding section above, it is
evident that Hassan's ineffective assistance of counsel claims
were considered in his state PCR proceedings and were not
rejected as procedurally barred.  Consequently, Claim G will be
denied for lack of merit.

Similarly, Hassan argues in Claim N that his application for
state post-conviction relief was not procedurally barred because
he made every attempt, <u>pro se</u>, to have these claims heard on
direct appeal.  Because all of Hassan's claims were presented for
state court review and were fully adjudicated on the merits on
collateral review, this Court finds that Hassan failed to state a
cognizable claim of a federal constitutional violation with
respect to Claim N.  At best, it appears that Hassan is
contending that the PCR court should have granted him an
evidentiary hearing.  Such claim likewise fails to state a
federal claim for which habeas relief may be granted, and state

law does not require evidentiary hearings to be held on PCR petitions, but rather leaves that matter to judicial discretion. See N.J.Ct.R. 3:22-1 and 3:2-10.

Hassan demonstrates no federal constitutional right that was violated by not having an evidentiary hearing in his PCR proceedings. See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)(what occurs in state collateral review proceedings "does not enter into the habeas calculation"), cert. denied 526 U.S. 1065 (1999). Therefore, claim N will be denied accordingly.

Finally, Hassan's counsel argues that the decision of the state appellate court in denying relief is contrary to the clearly established federal law as established by the United States Supreme Court in Henderson v. Morgan, 426 U.S. 637 (1976)(with respect to Hassan's claim that his guilty plea was not knowing, voluntary or intelligently made), and in Strickland and Evitts, supra (with respect to Hassan's claims of ineffective assistance of trial and appellate counsel). This Court rejects counsel's arguments. As set forth in Sections A and B above, this Court has expressly determined that the Appellate Division's ruling was not contrary to the clearly established federal law as established by the Supreme Court in Hill v. Lockhart, supra (with respect to the guilty plea) and in Strickland and Evitts (with respect to the ineffective assistance of counsel claims.

The Court does not find Henderson to be apposite here. In Henderson, the Court found that neither the defense counsel or the state court had explained to defendant that intent to cause

41

the death of his victim was an element of the offense of second
degree murder, and that defendant made no factual statement or
admission that implied such intent. The Court thus ruled that
the guilty plea was involuntary, noting that defendant's
"unusually low mental capacity" raised the possibility that the
homicide was manslaughter rather than murder. Henderson, 426
U.S. at 645-647. As discussed above, the record plainly shows no
inadequacy with respect to the factual basis for Hassan's plea.
The Appellate Division expressly observed that the State had
provided "strong, almost irresistible" circumstantial evidence
and "powerfully persuasive circumstantial facts" to support
Hassan's guilty plea and that Hassan had affirmatively stated to
the trial court at the plea hearing that he understood the
factual basis for his plea that the State presented and agreed
with the factual basis as presented. Further, Hassan
demonstrated no feeble mindedness or limited mental capacity that
would raise the possibility that he did not understand the nature
of his crime or the elements of the offenses for which he pled
guilty. Accordingly, this claim as asserted by Hassan's counsel
is denied for lack of merit.

42

## V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.   An appropriate Order follows.

DENNIS M. CAVANAUGH
United States District Judge

DATED: 9/6/11

43